UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 13-62693 |
| | ) | |
| KELLIE E. AARON | ) | CHAPTER 7 |
| | ) | |
| Debtor | ) | JUDGE RUSS KENDIG |
| | ) | |
| KELLIE E. AARON | ) | ADVERSARY CASE NO. 14-6009 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | **MOTION FOR SUMMARY** |
| EDUCATION, ARNE DUNCAN, | ) | **JUDGMENT** |
| SECRETARY, et al. | ) | |
| | | |
| Defendants | | |

I. **PROCEDURAL BACKGROUND AND JURISDICTION**

On October 31, 2013, Plaintiff, Kellie Aaron filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On December 23, 2013 the Chapter 7 Trustee filed a report of no assets, and on February 21, 2014 Plaintiff received her Chapter 7 discharge. On February 25, 2014, Ms. Aaron filed this adversary proceeding, seeking a discharge of her student loan debt as an undue hardship pursuant to 11 U.S.C. § 523(a)(8). On March 31, 2014, Defendant, the United States of America, on behalf of its agency, the U.S. Department of Education, filed its answer to the Complaint.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b). This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

II. **STATEMENT OF FACTS**

At the time the Complaint in this case was filed, Plaintiff, Kellie Aaron, was 51 years old

(she is now 53 years old).  She resides in Massillon, Ohio with her husband, Donald Aaron.  She is totally disabled and is not employed.  Mr. Aaron is employed at U.S. Castings Co. and has gross monthly income of $4,045.22.  He net income is approximately $3,000.00 per month (See Bankruptcy Schedule I & Affidavit of Kellie Aaron at Exhibit A).

Ms. Aaron graduated from the University of Akron in 1996 with a B.A. in Education.  She used the subject student loan funds to finance her education.  Ms. Aaron entered a Masters Degree program at the University of Akron in 2004 and borrowed additional funds.  She was unable to complete that program due to health concerns, marital problems, and because her minor child had attempted suicide.  In 2006 Ms. Aaron's Stafford student loans were consolidated into two Federal Family Education Loan Program loans.  The aggregate amount of the loans is $70,671.59, upon which interest has now accrued.  In 2007, her projected monthly payment was $354.83 for 30 years (Affidavit at Exhibit A, Loan Summary at Exhibit B and Loan Consolidation Disclosure Statement and Repayment Schedule at Exhibit H).

Ms. Aaron's first place of employment after graduation from college in 1996 was Buchtel High School in Akron, Ohio.  She transferred to Kenmore High School in 1998 and remained there for 9 years.  In 2005 Ms. Aaron went on medical leave due to the deteriorating condition of her back and spinal surgery.  In 2007, Ms. Aaron went back to work at Litchfield Middle School.  These school placements allowed Ms. Aaron to enter into a student loan deferment/forgiveness program.  She believes that she was in a program that should have caused a portion of her student loans to be forgiven.  She no longer has copies of any documentation related to that program and no documents produced by Defendant have shed any light on this issue (Affidavit at Exhibit A).

In May 2011 Ms. Aaron was injured at Litchfield Middle School and required more spinal surgery.  She was unable to return to work and applied for State Teachers Retirement

System (STRS) disability benefits. Ms. Aaron suffers from the following physical conditions:

1. Systemic Lupus Erythematosus (SLE)

   This disease is progressive and considered terminal as the disease process will eventually cause damage to Ms. Aaron's internal organs. She suffers from Lupus attacks which are triggered by viral and bacterial infections, any injury, exposure to the sun, stress, or other health problems such as her recent hip replacement surgery. At anytime she may be experiencing one or more of the following symptoms as a result of SLE:

   a. Exposure to the sun which causes her skin to erupt in lesions.

   b. Lesions in her mouth and on her tongue. This makes it difficult for her to eat and talk.

   c. Her SLE is complicated by another condition called Sjögren's Syndrome which attacks her salivary glands and lacrimal (tear) glands. As a result, she always has extreme dry mouth and dry eyes. This condition will eventually severely damage her glands and cause her to lose her teeth. She is prescribed Cevimeline for this condition which causes her to experience the following side affects: frequent urge to urinate, urinary tract infections, bed wetting, breathing problems (wheezing and coughing) and memory loss. She has been prescribed Desmopressin to slow her urine production and prevent incontinency at night. She takes Dipropan XL for incontinency during the day. These drugs are about 75% effective.

        d.        She also suffers from Thrombocytotenic which is related to the SLE. This causes a decrease in the platelets in her blood. She is given steroids when her platelets drop below a certain level. One side effect of the steroids is weight gain and a chronic swollen face.

        e.        She is also prescribed Plaquenil for the SLE which causes nausea. She has been prescribed Protonix for the nausea.

        f.        As a result of the SLE, Ms. Aaron suffers from intermittent (approximately 7-14 days per month) joint pain and weakness in her fingers, ankles, knees, hips, elbows, shoulders and neck. She also experiences numbness and tingling in her fingers and feet to the point where she cannot feel them.

2. Degenerative Joint Disease and Osteomalacia which cause joint pain and muscle weakness.

3. Degenerative Disc Disease and Spinal Stenosis (Cervical and Lumbar). Ms. Aaron has had seven surgeries on her back. Her lumbar spine has stabilization rods and bilateral pedicle screws at L2 & 3, L3 & 4 and L4 & 5. Her symptoms include lower back pain, numbness and tingling in her back and left leg, and severe muscle spasms. She has been prescribed Neurotin, Fetanyl, Baclosen, and Hydrocodone for this condition. The side effects of this medication include nausea, constipation, drowsiness and confusion. Ms. Aaron is unable to drive a vehicle as a result of these side effects.

4. Clonus (over extended reflexes) that is the result of the nerve damage in her back. She often has difficulty walking and must use a walker.

5. Sleep Apnea. Ms. Aaron is now using a C-Pap Machine which has alleviated most of her symptoms.

6. Asthma. During the past year, Ms. Aaron's asthma has contributed to her having chronic bronchitis and pneumonia. She uses a Nebulizer with Albuterol every night to help protect her against these symptoms and an additional 4 times per day when she is having difficulty breathing. She also takes Spiriva, Proair, and Proventil for this condition. Side effects from these medications include insomnia and tremors.

(Affidavit at Exhibit A).

According to Ms. Aaron, she has been unable to return to work due to the pain, numbness and muscle spasms in her lower back; the joint pain and muscle weakness in her fingers, ankles, knees, hips, elbows, shoulders and neck; the numbness and tingling in her lower extremities, fingers and feet; her breathing difficulties and chronic bronchitis; and the side effects of the medication she takes including nausea, constipation, drowsiness, confusion, urinary incontinence and memory loss. She has difficulty sitting and standing for more than 15 minutes at a time, has difficulty walking, and is often incapacitated by the medication she must take for all of her conditions (Affidavit at Exhibit A and Medical Records at Exhibits C, D, E, & F).

Ms. Aaron's gross monthly benefit from STRS is $2,074.00. The following is deducted from the gross amount: Federal taxes ($265.66), State taxes ($50.00), and Dental and Vision Insurance ($85.87), leaving her with $1,672.96 in net monthly income. From her net monthly income she pays $104.90 per month for Medicare and over $800.00 per month for co-pays, meeting deductibles, medical appliances, prescriptions and over the counter medications. In 2015 she had $10,067.00 in uninsured medical expenses. As a result of her hip replacement

surgery and needing hearing aids, she has already spent $7,181.33 for health care in 2016. Ms Aaron's remaining net monthly income of approximately $700.00 goes to helping her husband pay their monthly living expenses. At the time of her bankruptcy filing, the couple's fixed monthly expenses (**excluding** food, clothing, personal care products, home repairs, pet care expenses, entertainment), were as follows:

| | |
|---|---:|
| Mortgage | $1,052.64 |
| Electric/Gas | 350.00 |
| Water/Sewer | 65.00 |
| Telephone/Cell phones/Cable and Internet | 260.00 |
| Gas, and Maintenance for Husband's Vehicle | 300.00 |
| Vehicle Insurance | 268.00 |
| Vehicle Payment | 305.00 |
| Husband's Student Loan | 150.00 |
| Total | $2,750.64 |

Donald Aaron's net income is approximately $3,000.00 per month. That leaves only $1,017.00 per month for all of their other necessary expenses - food, clothing, personal care products, home maintenance and repairs, and pet care expenses. Mr. Aaron is also obligated to pay $300.00 per month on two credit cards. Ms. Aaron's $700.00 contribution to the couple's fixed monthly expenses is only 25% of the total (Affidavit at Exhibit A).

    Ms. Aaron's Chapter 7 bankruptcy filing shows just how devastating her health problems have been on her financial situation. In addition to her student loan debt, Ms. Aaron had the

following categories of debt:

| | |
|---|---|
| Medical Bills | $ 62,168.69 |
| Deficiency Balance on Mortgage | $ 30,000.00 |
| Unpaid Utility Bills | $ 12,356.71 |
| Credit Card Debt | $ 9,814.12 |
| Legal Fees | $ 4,500.00 |
| Social Security Overpayment | $ 3,149.81 |
| Deficiency Balance on Repossessed Auto | $ 2,652.33 |
| Personal Loan | $ 1,581.45 |

As this Court is aware, Ms. Aaron received a conditional discharge from the U.S. Department of Education. As a result of this debt forgiveness, Ms. Aaron received a Form 1099-C in the amount of $73,544.00 for the 2014 tax year. She has filed her 2014 Federal Income Tax Return and Form 982 (reduction due to insolvency) (2014 1040 at Exhibit G). The Internal Revenue Service will have, at a minimum, until 2018 to audit Ms. Aaron's return.

### III. LAW AND ARGUMENT

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056, provides that a party will prevail on a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must establish all of the elements of his or her cause of action. R.E. Cruise Inc. v. Bruggeman, 508 F.2d 415, 416 (6th Cir.1975). Furthermore, in

making this determination, the Court is required to view all the facts in a light most favorable to the party opposing the motion. Matsushita v. Zenith Radio Corp., 475 U.S. 574, 586-588 (1986).

### B. Bankruptcy Code § 523(a)(8)

Section 523(a)(8) of the Bankruptcy Code provides that an educational loan, like the one in this case, is not dischargeable in bankruptcy "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." The Bankruptcy Code does not define what is meant by "undue hardship." As a result, courts have developed various tests to determine whether or not "undue hardship" exists. In Oyler v. Educational Credit Management Corp. (In re Oyler), 397 F.3d 382 (6th Cir. 2005), the Sixth Circuit joined the other circuits that have formally adopted the "undue hardship" test set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987) (hereinafter "the Brunner Test).

Under the Brunner Test, a debtor must establish the following three elements in order to have a student loan discharged on the basis of "undue hardship" under Section 523(a)(8):

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

831 F.2d at 396. It is the debtor's burden to establish, by a preponderance of the evidence, that each of the elements in the Brunner Test have been met. See, e.g., Flores v. U.S. Dept. of Education (In re Flores), 282 B.R. 847, 853 (Bankr. N.D. Ohio 2002).

1. **Minimal Standard of Living**

The first prong of the Brunner Test is whether Ms. Aaron would be unable to maintain a minimal standard of living for herself and her dependents if forced to repay her student loans. The essence of the minimal standard of living requirement of the Brunner Test is that a debtor, after providing for her basic needs, may not allocate any of his or her financial resources to the detriment of their student loan creditor(s). See, Rice v. United States (In re Rice), 78 F.3d 1144, 1149 (6th Cir.1996).

The Brunner Test meets the practical needs of the debtor by not requiring that she live in abject poverty before a student loan may be discharged. Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby), 144 F.3d 433, 438 (6th Cir.1998). On the other hand, the Brunner Test attempts to safeguard the financial integrity of the student loan program by not allowing debtors to avoid repaying their student loans merely because repayment of the borrowed funds would require some major personal and financial sacrifices. In re Faish, 72 F.3d 298, 305-06 (3d Cir. 1995). The analysis of the first prong centers around two considerations: (1) the debtor's income and (2) those expenses which are necessary for the debtor to meet his or her basic needs. In re Flores, 282 B.R. at 853.

There is really no question that given Ms. Aaron's limited income and extraordinary medical expenses, she currently has no ability to pay her student loans. From her net monthly benefit of $1,672.96 from STRS, Ms. Aaron pays $104.90 for Medicare and over $800.00 per month for co-pays, meeting deductibles, medical appliances, prescriptions and over the counter medications, leaving $700.00 for all other monthly expenses. Ms. Aaron's $700.00 per month contribution to her and her husband's fixed monthly living expenses is only 25% of those expenses and she has no funds remaining to cover the cost of food, clothing, personal care

products, home repairs and maintenance, and emergency expenses and must therefore rely on her husband to provide those necessities. In 2007, Ms. Aaron's projected monthly payment for her consolidated student loans was $354.83 for a period of 30 years. Under her current and projected financial circumstances, it is improbable that Ms. Aaron will ever be able to pay even a small fraction of that monthly amount.

B.     **Additional Circumstances**

The second prong of the Brunner Test requires a showing of additional circumstances that indicate Ms. Aaron's current state of financial affairs is likely to persist for a significant portion of the student loan repayment period. In re Oyler, 397 F.3d at 385. Such additional circumstances may include illness, disability, a lack of useable job skills or the existence of a large number of dependents. Those circumstances must be beyond the debtor's control, not borne of free choice. Oyler, 397 F.2d at 386. A debtor "must precisely identify [his] problems and explain how [his] condition would impair [his] ability to work in the future." Educ. Credit Mgmt. Corp. v. Barrett (In re Barrett), 337 B.R. 896, (B.A.P. 6th Cir. 2006), quoting Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005).

In Educ. Credit Mgmt. Corp. v. Barrett (In re Barrett), the issue before the Court was whether the second prong of the Brunner Test requires corroborating evidence in the form of expert medical proof to establish that the circumstances that cause a debtor's inability to repay his loans will likely continue for a significant portion of the repayment period. The Court held that "[t]here is no per se requirement of expert medical proof implied in the second prong of the Brunner test." The Court determined that the bankruptcy court had properly concluded that although the debtor was not a medical expert, the debtor could "testify about how his diagnosis affects his own health and his firsthand knowledge about that." Id. at 901. See also, Brightful v.

Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 330 (3rd Cir. 2001) (The bankruptcy court's findings regarding a debtor's physical condition do not require expert testimony). In Educ. Credit Mgmt. Corp. v. Barrett (In re Barrett), the Sixth Circuit concluded that,

> The Debtor here has provided corroborating evidence in the form of documentation confirming his past illness, his testimony concerning past events, and in his physical condition and demeanor. The Debtor has testified as to how his physical condition affects his ability to be employed. Mosley v. Gen. Rev. Corp. (In re Mosley), 330 B. R. 832, 846 (Bankr. N.D. Ga . 2005). None of the circumstances that will impede the Debtor's ability to repay his student loans in the future is within his control. In short, the record as a whole provides a "certainty of hopelessness" that this Debtor will be able to repay his student loan obligation in the future. Tirch, 409 F.3d at 682. The evidence provided by the Debtor was sufficient, in this case, to establish the second prong of the Brunner test.

In the present case, Ms. Aaron states in her Affidavit that she suffers from:

1. Systemic Lupus Erythematosus (SLE) whose symptoms include skin lesions, lesions in her mouth and on her tongue, intermittent (approximately 7-14 days per month) joint pain and weakness in her fingers, ankles, knees, hips, elbows, shoulders and neck and numbness in her fingers and feet to the point where she cannot feel them. She is prescribed Plaquenil for the SLE which causes nausea. She has been prescribed Protonix for the nausea.

2. Sjögren's Syndrome which attacks her salivary glands and lacrimal (tear) glands. As a result, she always has extreme dry mouth and dry eyes. She is prescribed Cevimeline for this condition which causes her to experience the following side effects: frequent urge to urinate, urinary tract infections, bed wetting, breathing problems (wheezing and coughing) and memory loss. She must take Desmopressin to slow her urine production and prevent incontinency at night and Dipropan XL for incontinency during the day. These drugs are only 75%

effective.

3. Thrombocytotenic which causes a decrease in the platelets in her blood. She is given steroids when her platelets drop below a certain level. One side effect of the steroids is weight gain and a chronic swollen face.

4. Degenerative Joint Disease and Osteomalacia which causes Ms. Aaron to have joint pain and muscle weakness.

5. Degenerative Disc Disease and Spinal Stenosis (Cervical and Lumbar). Ms. Aaron has had seven surgeries on her back. Her lumbar spine has stabilization rods and bilateral pedicle screws at L2 & 3, L3 & 4 and L4 & 5. Her symptoms include lower back pain, numbness and tingling in her back and left leg, and severe muscle spasms. She has been prescribed Neurotin, Fetanyl, Baclosen, and Hydrocodone for this condition. The side effects of this medication include nausea, constipation, drowsiness and confusion. Ms. Aaron is unable to drive a vehicle as a result of these side effects.

6. Clonus (over extended reflexes) that is the result of the nerve damage in her back. As a result of this condition, Ms. Aaron often has difficulty walking and must use a walker.

7. Sleep Apnea. Ms. Aaron is now using a C-Pap Machine which has alleviated most of her symptoms.

8. Asthma which has contributed to Ms. Aaron having chronic bronchitis and pneumonia. She uses a Nebulizer with Albuterol every night to help protect her against these symptoms and an additional 4 times per day when she is having difficulty breathing. She also takes Spiriva, Proair, and Proventil for this

condition. Side effects from these medications include insomnia and tremors.

    9.  Bipolar Disorder and Anxiety.

(Affidavit at Exhibit A; Medical Records at Exhibits C, D, E, and F).

  According to Ms. Aaron, she has been unable to return to work due to the pain, numbness and muscle spasms in her lower back; the joint pain and muscle weakness in her fingers, ankles, knees, hips, elbows, shoulders and neck; the numbness and tingling in her lower extremities, fingers and feet; her breathing difficulties and chronic bronchitis; and the side effects of the medication she takes including nausea, constipation, drowsiness, confusion, urinary incontinence and memory loss. She has difficulty sitting and standing for more than 15 minutes at a time, has difficulty walking, and is often incapacitated by the medication she must take for all of her conditions (Affidavit at Exhibit A). Here, Ms. Aaron has provided corroborating evidence in the form of documentation confirming her past and present illnesses and a sworn statement setting forth the symptoms she experiences and their frequency, how those symptoms affect her daily life, and how her physical condition affects her ability to be employed. None of the circumstances that will impede Ms. Aaron's ability to repay her student loans in the future are within her control. See, Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005). In summary, given her various medical conditions and their symptoms, Ms. Aaron's inability to pay her student loans will likely persist for a significant portion of the loan repayment period.

  **C.**  **Good Faith**

  The third prong of the Brunner Test requires a debtor to establish that he or she has made a good faith effort to repay his or her student loan obligation. This factor recognizes that "with the receipt of a government-guaranteed education, the student assumes an obligation to make a

good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses." In re Roberson, 999 F.2d at 1136. The first inquiry in this regard is whether the debtor actually made payments on his or her student loan obligations, and if so, in what amount. Green v. Sallie Mae Servicing Corp. & Great Lakes Higher Educ. Corp. (In re Green), 238 B.R. 727, 736 (Bankr. N.D. Ohio 1999). However, even where a debtor has failed to make any payments on a student loan obligation, this fact, alone, does not automatically foreclose a finding of good faith under the third prong of the Brunner Test. Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys), 356 F.3d 1302, 1311 (10th Cir 2004) ("The failure to make a payment, standing alone, does not establish a lack of good faith."); In re Flores, 282 B.R. at 856. Instead, in determining the existence of good faith, a court should take into account other considerations including:

1. Whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;

2. Whether the debtor has realistically used all of his or her available financial resources to pay the debt;

3. Whether the debtor is using his or her best efforts to maximize their financial potential;

4. The length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

5. The percentage of the student loan debt in relation to the debtor's total indebtedness.

6. Whether the debtor obtained any tangible benefit(s) from their student loan obligation.

See, Bruen v. U.S.A. (In re Bruen), 276 B.R. 837 843-44 (Bankr. N.D.Ohio 2001); Miller v. U.S. Dep't of Educ. (In re Miller), 254 B.R. 200, 205 (Bankr. N.D.Ohio 2000); Green v. Sallie Mae Servicing Co. (In re Green), 238 B.R. 727, 736 (Bankr. N.D.Ohio 1999).

Here, Ms. Aaron used her student loan funds to obtain a B.A. in education from the University of Akron in 1996 and then to begin a Masters Degree program in 2004. She was unable to complete that program due to her deteriorating health and family circumstances.

Upon graduation in 1996, Ms. Aaron immediately found employment with the Akron Public School System. Her first placement was at Buchtel High School and she then later transferred to Kenmore High School in 1998 where she remained for 9 years. This course of action is evidence that Ms. Aaron made every attempt to maximize her financial potential (Affidavit at Exhibit A).

In 2005 Ms. Aaron went on medical leave due to the deteriorating condition of her back and spinal surgery. In 2007, Ms. Aaron attempted to go back to work and found employment at Litchfield Middle School. According to Ms. Aaron, all of these school placements allowed her to enter into a student loan deferment/forgiveness program where a portion of her student loans would be forgiven (Affidavit at Exhibit A). There is no evidence that Ms. Aaron sought to avoid her student loan obligations without any attempt at repayment. She did not immediately seek to discharge her student loan debt (either through the Department of Education or her Chapter 7 Bankruptcy) and it was not until she became totally disabled that Ms. Aaron decided to pursue a discharge. Following her injury at Litchfield Middle School in May 2011 and her subsequent spinal surgery, Ms. Aaron was unable to return to work and applied for State Teachers Retirement System (STRS) disability benefits, which were granted.

Ms. Aaron does not have any other financial resources to pay her student loan debt. She does not own real estate or a vehicle. According to Schedule B of her Bankruptcy filing, she owns only $1,400.00 in personal property. While she received a tangible benefit from the student loan funds, she is unable to utilize that benefit now to repay the debt. There is no evidence that

Ms. Aaron's inability to repay her student loans was due to factors within her control. Under these circumstances Ms. Aaron has established the good faith prong of the Brunner Test.

Respectfully submitted,

/s/ Joy S. Wagner
Joy S. Wagner 0040380
Attorney for Kellie E. Aaron
Barberton, Ohio 44203
(330) 753-3900

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 29, 2016, the foregoing was electronically submitted via the Court's CW/ECF systems to the following who are listed on the Court Electronic Mail Notice and U.S. Mail Service to all the following parties of interest listed below.

**Electronic Mail Notice List:**

Lisa Barbacci, Chapter 7 Trustee

Suzana K. Koch, Assistant United States Attorney
Attorney for United States of America, Department of Education

**U.S. Regular Mail Notice:**

Suzana K. Koch, Assistant United States Attorney
Attorney for United States of America, Department of Education
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113

Daniel M. McDermott, U.S. Trustee
Office of the U.S. Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue, Suite 441
Cleveland, Ohio 44114

                                                /s/ Joy S. Wagner
                                                Joy S. Wagner 0040380