**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 01:45 PM June 20, 2016**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| KELLIE E. AARON, | ) | CASE NO. 13-62693 |
| | ) | |
| Debtor. | ) | ADV. NO. 14-6009 |
| _____ | ) | |
| KELLIE E. AARON, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| U.S. DEPARTMENT OF | ) | **(NOT FOR PUBLICATION)** |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff-debtor Kellie E. Aaron ("Debtor") filed a motion for summary judgment seeking to have her student loan debt declared nondischargeable under 11 U.S.C. § 523(a)(8). The United States of America, on behalf of the U.S. Department of Education ("DOE"), opposes the motion.

The court has subject matter jurisdiction of the underlying bankruptcy case pursuant to 28 U.S.C. § 1334 and the general order of reference entered by the United States District Court for

1

the Northern District of Ohio on April 4, 2012. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(I) and the court has authority to issue final entries. Venue in this district is appropriate under 11 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## DISCUSSION

In her motion, Debtor set forth her grounds for a finding that repayment of her student loans would be an undue hardship, thereby providing a basis for dischargeability under 11 U.S.C. § 523(a)(8). The DOE response did not challenge any of the classic elements of a student loan dischargeability action. *See* Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382 (6th Cir. 2005). Instead, the DOE argues that since Debtor obtained an administrative discharge of her student loans based on total and permanent disability, there is no longer a debt owed to discharge, making consideration of the motion moot.

I.  **There is a debt**

The court cannot agree with DOE's position that there is no debt. Based on the November 6, 2013 letter provided by DOE, the loans were discharged. (Resp. to M. Summ. Judg., Ex. A, ECF No. 32-1) The letter states "the Department has approved your application for discharge of the federal student loan . . . identified below on the basis of your total and permanent disability." The problem is the discharge is conditional because it is subject to a 3-year post-discharge monitoring period where the loans are subject to reinstatement for several identified reasons.

Debt is "liability on a claim." 11 U.S.C. § 101(12). Claim is defined broadly and includes rights to payment that are contingent, unmatured, unliquidated, and more. 11 U.S.C. § 101(5)(A). The Sixth Circuit explained that the meanings of each are coextensive, with the purpose of adopting a broad understanding of claim and debt. Glance v. Carroll (In re Glance), 487 F.3d 317, 320 (6th Cir. 2007) (citations omitted).

Contingent is not defined by the bankruptcy code but courts find that a future event which triggers a debtor's liability creates a contingent debt. In re Huffy Corp., 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (citing In re Parks, 281 B.R. 899, 901-02 (Bankr. E.D. Mich. 2002)); In re Highland Grp., Inc., 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992); In re Lipa, 433 B.R. 668 (Bankr. E.D. Mich. 2010); In re Smith, 365 B.R. 770, 781 (Bankr. S.D. Ohio 2007) (quoting Mazzeo v. U.S. (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997)); In re Krupka, 317 B.R. 432, 436 (Bankr. D. Colo. 2004)). Courts also resort to Black's Law Dictionary definitions to define contingency. Mich. Prop. Ventures, LLC v. U.S., 2014 WL 2895485 (E.D. Mich. 2014) (citing Black's Law Dictionary (9th ed. 2009) ('[a]n interest that the holder may enjoy only upon the occurrence of a condition precedent'); Regency Realty Grp., Inc. v. Michaels Stores, Inc., 2013 WL 3936399 (E.D. Mich. 2013) (citing Black's Law Dictionary (9th ed. 2009)

(contingent means '[d]ependent on something else; conditional'). Examples of contingent claims include guarantees and tort claims that have not been reduced to judgment. Lipa, 433 B.R. 668, 670 (citation omitted); In re Winters, 2012 WL 1067696 (Bankr. E.D. Tenn. 2012); In re Hughes, 98 B.R. 784 (Bankr. S.D. Ohio 1989) (citations omitted).

The ability of the DOE to revive Debtor's liability on the student loans during the monitoring period creates a contingent liability. If one of the triggering events occurs, the discharge is revoked and Debtor again will be responsible for the debts. For this reason, the court finds that the administrative discharge was not a complete release of Debtor's liability. Contrary to DOE's argument, the potential obligation Debtor faces over the three year monitoring period creates a contingent debt. Thus, there is a debt subject to discharge and DOE's argument is rejected.

## II. Undue hardship

To succeed on her motion for summary judgment, Debtor must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.Pro. 7056 (adopting Fed.R.Civ.Proc. 56). Even though the court rejected DOE's responsive argument, Debtor still must establish she is entitled to summary judgment. Papatheodorou v. Clark, 781 F.Supp.2d 582, 585 (N.D. Ohio 2011) (citing Stough v. Mayville Cmty. Sch., 138 F.3d 612, 614 (6th Cir. 1998) (quotation omitted)). As movant, Debtor bears the initial burden of proof. Palmer v. Cacioppo, 429 Fed.App'x. 491 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). And it is Debtor's burden to prove undue hardship. Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett), 487. F.3d 353 (6th Cir. 2007).

To prove undue hardship, Debtor must show (1) based on her current income and expenses, she cannot maintain a minimal standard of living if forced to repay the loans, (2) the state of her affairs is likely to persist for a significant period of the repayment term, and (3) she made a good faith effort to repay the student loans. Oyler, 397 F.3d 382, 385 (citing Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395 (2nd Cir. 1987). In addition to the record in this case, including Debtor's schedules, Debtor also provided an affidavit and various exhibits in support of her claim for dischargeability.

### A. Debtor has not done all she can to reduce expenses and there is no payment due that renders Debtor unable to maintain a minimal standard of living

Debtor receives a gross benefit of $2,074.00 per month from the State Teachers Retirement System ("STRS"). After deductions for federal and state taxes and dental and vision insurance, her net monthly income is $1,672.96. Her husband is employed and has gross earnings of approximately $4,000.00 per month. After deductions for taxes and a 401(k) contribution, he nets $3,000.00 per month, for a combined household net income of $4,672.96 per month. Debtor's household includes her stepson, who is in his early 20s. The court does not know if he is an IRS dependent. Debtor's household income is above median regardless.

The housing and utility standards for a family of three in Stark County, Ohio are $940.00.

3

This figure includes mortgage/rent, property taxes, interest, insurance, maintenance, gas, electric, water, heating oil, garbage collection, telephone, cell phone, internet, and cable.[1] Debtor's household figures significantly exceed the local standards:[2]

| | |
|---|---:|
| Mortgage (including real estate taxes and insurance) | $1,052.64 |
| Home maintenance | 100.00 |
| Electricity and heating fuel | 350.00 |
| Water and sewer | 65.00 |
| Telephone | 260.00 |
| Trash removal | 20.00 |
| Lawn care | 52.49 |
| Cable services | 115.27 |
| | $2,015.40 |

Similarly, Debtor's transportation expenses exceed the IRS local transportation expense standards.[3] The operating and ownership costs for Ohio total $719.00. Debtor's household has one vehicle with the following associated expenses:

| | |
|---|---:|
| Transportation (gas, maintenance) | $300.00 |
| Insurance | 268.00 |
| Car payment | 305.00 |
| | $873.00 |

These expenses consume approximately sixty-two percent (62%) of the household net income. After these expenses, $1,784.56 remains to pay for food, clothing, personal care, pet care, medical, and her husband's expenses. Debtor itemizes those as follows:

| | |
|---|---:|
| Food | $400.00 |
| Clothing | 50.00 |
| Laundry and dry cleaning | 50.00 |
| Recreation | 100.00 |
| Pet care | 50.00 |
| Husband's credit cards | 300.00 |
| Husband's student loan | 150.00 |
| Medical[4] | 904.90 |
| | $2,004.90 |

Based on these figures, Debtor's household is in the red.

---

1 The court is using the standards applicable for the April 1, 2016 to April 30, 2016 period which were in effect when the motion for summary judgment was filed.
2 https://www.justice.gov/ust/eo/bapcpa/20160401/bci_data/housing_charts/irs_housing_charts_OH.htm
3 https://www.justice.gov/ust/eo/bapcpa/20160401/bci_data/IRS_Trans_Exp_Stds_MW.htm
4 This figure was taken from Debtor's motion for summary judgment. Debtor's Schedule J had a figure of $660.00 for medical, dental and prescription expenses.

Debtor has over $70,000.00 in student loan debt. In her motion, she indicates that in 2007, the monthly payment on a 30 year amortization was $354.83. If this figure is added to her household expenses, household expenses exceed income by $575.17. The mere fact that expenses exceed income is not determinative. The test involves more than basic addition and subtraction of existing expenses, it also involves review of the expenses. The question is whether Debtor can maintain a minimal standard of living while repaying her student loans. While a debtor is not expected to live in "abject poverty," s/he is expected to maximize income and minimize expenses. Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby), 144 F.3d 433, 438 (6th Cir. 1998); Oyler, 397 F.3d 382, 385. The mere fact that Debtor may be "financially burdened" is not enough to end the inquiry. Hornsby, 144 F.3d 433, 438. Neither is it a question of whether Debtor's life is challenging in other ways.

Debtor has adequately documented numerous medical problems that clearly limit her ability to work. The diagnoses in the exhibits attached to her motion include, but are not limited to, Lupus Erythematosus Systemic, Osteomalacia Unspec, Sicca Syndrome, Sjogren's Syndrome, spinal stenosis (cervical and lumbar), myelopathy, obstructive sleep apnea, cervical disc disorder with myelopathy, carpal tunnel syndrome, enthesopathy of the hip, bipolar disorder (mixed), anxiety, and asthma. Her mobility is compromised and she has chronic pain. She is on numerous medications. She had a hip replacement and wears hearing aids. The court is convinced that Debtor has not failed to maximize her income and is extremely fortunate to have the STRS benefit. However, even assuming the stepson qualifies as a dependent, Debtor lives above the median income of a family of three in Ohio, $64,241.00.[5] Debtor's median household income is approximately $72,000.00.

On the expense side of the equation, a debtor is expected to engage in belt-tightening. Id.; Nixon v. Key Educ. Res. (In re Nixon), 453 B.R. 311 (Bankr. S.D. Ohio 2011). The mere existence of an expense does not make it acceptable. The focus is on the impact repayment of the student loans has on a debtor's ability to meet basic needs. Lamento v. U.S. Dep't of Educ. (In re Lamento), 520 B.R. 667, 676 (Bankr. N.D. Ohio 2014). The Nixon court identified shelter, basic utilities, food and personal hygiene products, clothing, transportation, health care, and "some small diversion or source of recreation" expenses as components of a minimal standard of living. Id. at 326-27 (citing Wallace v. Educ. Credit Mgmt. Corp. (In re Wallace), 443 B.R. 781-787-88 (Bankr. S.D. Ohio 2010) (quoting Ivory v. U.S (In re Ivory), 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)).

Debtor's expenses demonstrate a lifestyle above a minimal standard of living. Her housing expenses are nearly double the standards. And, although there is only one car in the household, the transportation expenses also exceed the standard. A monthly expense of $268.00 for car insurance is unreasonable. The court is not convinced that Debtor attempted any reduction in discretionary expenses, including telephone and cable. In the court's experience, Debtor's utility expenses, specifically electricity and heat, also are on the high side for this area. While the court is willing to accept a modest recreation expense, multiple expenses, including the actual recreation expense of $100.00, the cable and telephone expenses, and the pet care expense, all encompass some form of recreation. There appears to be no effort to minimize

---

5 https://www.justice.gov/ust/eo/bapcpa/20160401/bci_data/median_income_table.htm

expenses. Debtor's expenses demonstrate that she is living above a minimal standard of living. It is not an unreasonable standard of living but the test is much more stringent than a standard of reasonableness.

Moreover, Debtor obtained administrative discharge of her student loans. No payments will be due unless a triggering event occurs during the three year monitoring period, resulting in reinstatement of the loans. The likelihood of this happening is remote. Under these facts, the court cannot conceive how it can rationally say that, when there is no repayment at issue, the repayment of her student loans affects Debtor's minimal standard of living. For these two reasons, the failure to minimize expenses and the administrative discharge of the loans, the court finds that Debtor failed to prove the first prong of the Brunner analysis for undue hardship.

The court is cognizant that this prong of the Brunner test was likely not intended to cover these facts. The test works awkwardly, at best, on these facts. Debtor is currently not obligated to pay on the loans as a result of an administrative discharge based on total and permanent disability. The fact that she doesn't have to pay on the loans actually makes it more difficult to prove this prong because the zero payment cannot impact her ability to maintain a minimal standard of living. If she would come to the point where she had to pay on the loans, it would mean her condition had improved and she could work. The test is not entirely logical but is the applicable legal test.

### B. Debtor's state of affairs is likely to persist

Under the second part of the undue hardship analysis, a debtor must show that Debtor's situation is enduring, 'not merely a present inability to fulfill financial commitment.' Oyler, 397 F.3d 382, 386 (quoting In re Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993)). The circumstances also "must be beyond the debtor's control, not borne of free choice." Oyler, 397 F.3d 382, 386 (citation omitted). For this Debtor, the court views the inquiry as whether the foreseeable future shows the promise of improved circumstances, such as new or better job opportunities, lesser expenses, or improved health. Lamentably, no such change in circumstance appears likely for Debtor. Like the debtor in Barrett, Debtor's "long medical history and inability to work consistently indicate a 'certainty of hopelessness . . . borne out of circumstances beyond [her] control." Barrett, 487 F.3d 353, 363. She met the second prong of the Brunner analysis.

### C. Debtor has not made a good faith effort to repay the student loans

For the final consideration, Debtor must prove that she made a good faith effort to repay the student loans. Factors speaking to this prong include whether (1) the failure to pay the student loan was due to circumstances beyond the debtor's control, (2) the debtor realistically used all available resources to repay the debt, (3) the debtor is doing her best to maximize her income, (4) the length of time between incurrence of the debt and the attempt to discharge it, (5) the student loan to overall debt ratio, and (6) did the debtor enjoy a tangible benefit from the student loans. Fields v. Sallie Mae Serv. Corp. (In re Fields), 286 Fed.App'x 246, 249-50 (6th

Cir. 2007) (unpublished) (citing In re Flores, 282 B.R. 847, 856 (Bankr. N.D. Ohio 2002)).[6]

It is not clear that Debtor ever personally paid anything on her student loans in the nearly twenty years she has owed. Debtor suggests, without corroborating evidence, that because of her employment as a teacher, she was able to "enter a teacher student loan deferment/forgiveness program." (M. Summ. Judg., Ex. A ¶ 5, ECF No. 31-1) Looking at Exhibits B and H, it seems plausible that Debtor was credited with some payments on her undergraduate loans. It appears that she was loaned approximately $22,583.00 while an undergraduate student. A loan history indicates that she consolidated her loans in 2006. It appears she consolidated $20,383.58 in undergraduate loans and $42,759.54 in graduate loans. According to the court's calculations, Debtor borrowed approximately $22,583.00 for her undergraduate studies. Based on these figures, at a minimum, it is conceivable that the interest was forbeared or forgiven. Using the same principles, minimal to no amounts were paid on the graduate loans through the consolidation period.

After consolidation, minimal to no payments were credited. In 2006, the total amount consolidated was over $60,000.00 at 5.25% interest. (M. Summ. Judg. Ex. H, ECF 31-2) Eight years later, on of March 11, 2014, Debtor owed $70,671.59 and interest of $2,646.88. Per the statement, interest was accruing at $6.10 per day. It therefore appears that if any payments were made, they were minimal. There is also no evidence in the record, nor does Debtor claim, that she attempted to obtain relief through forbearance, deferment or use of the income contingent repayment plan.

While Debtor contends "[t]here is no evidence that [I] sought to avoid [my] student loan obligations without any attempt at repayment," she has fully failed to carry her burden of proof that any failure to pay was beyond her control. Debtor was employed as a teacher from 1996 through 2005, then again from 2007 to 2011. She has not offered any proof of payments, or reasons for lack of payments, during these time periods. Nor did Debtor convince the court she was using available resources to pay the debt. These factors cut against a finding of a good faith effort to repay.

There are tendencies in favor of Debtor on good faith. As the court previously discussed, she has maximized her income. She also waited nearly two decades from obtaining her first loan to request discharge.

The remaining two considerations do not support a showing of good faith. Debtor's student loan debt of $70,000.00+ represents roughly one-third of her overall unsecured debt from Schedule F, not an overwhelming majority. And it clear that Debtor did enjoy a tangible benefit from the loans, which allowed her to obtain employment as a teacher. That employment forms the basis of her monthly income from STRS.

Overall, the record does not demonstrate Debtor made a good faith effort to repay her loans, nor has Debtor made a convincing argument on this point. This finding is not to diminish

---

6 Although the Sixth Circuit ultimately disagreed with the bankruptcy court's decision in Flores, it did not contest the bankruptcy court's use of these six factors to determine good faith.

the serious health concerns that Debtor now faces.   It is a recognition that, while employed, there is no proof she attempted to make payments to reduce the debt.   And, after she went on disability, there is no proof that she took any action on the loans.   At best, the available record shows she was apathetic.   That does not equate to good faith.

## **CONCLUSION**

Debtor's motion for summary judgment is denied.   Although the court rejects DOE's argument that the administrative discharge eliminated the debt, thereby making this motion moot, the court is not persuaded that repayment of Debtor's student loans is an undue hardship. Until the three year monitoring period expires, Debtor's liability on the loans is contingent, creating a debt.   Under 11 U.S.C. § 523(a)(8), that debt can be discharged upon a showing of undue hardship by Debtor, which Debtor did not demonstrate.   Debtor's household income is above median and her expenses manifest a lifestyle above a minimal standard of living.   Further, since no payments are due on the loans, it is fallacy to profess repayment creates an undue hardship.   Although Debtor's situation does not appear likely to improve in the foreseeable future, supporting her quest for dischargeability, Debtor had no proof that she ever made any payments on her student loans.   For these reasons, the court cannot find the debt is dischargeable on Debtor's motion for summary judgment.   An order will enter immediately.

#   #   #

**Service List:**

Joy S Wagner
507 W Park Ave
Barberton, OH 44203

Suzana Krstevski Koch
United States Attorney's Office, NDOH
801 W. Superior Avenue
Suite 400
Cleveland, OH 44113

8

14-06009-rk    Doc 33    FILED 06/20/16    ENTERED 06/20/16 14:52:00    Page 8 of 8